**In the Interest of J.(B.B.) M., A Minor Child.**

No. 04–96–00827–CV.

Court of Appeals of Texas, San Antonio.

Oct. 8, 1997.

David E. Garcia, Yanta, Flores & Korth, L.L.P., Laredo, John C.D. Drolla, Jr., Austin, for Appellant.

Kate Guinn Gonzalez, Patricia Wueste-Whitted, San Antonio, Jo Chris G. Lopez,

Shaddox, Compere, Walraven & Good, P.C., San Antonio, for Appellee.

Before HARDBERGER, C.J., and GREEN and ANGELINI, JJ.

## OPINION

ANGELINI, Justice.

This appeal arises from an order terminating the parental rights of appellant, Laura Martinez, to the baby boy whom she delivered in May of 1996. In three points of error, Martinez contends that (1) the trial court erred in not allowing her to testify or present evidence at the termination hearing; (2) the trial court erred in denying her adequate time to prepare for trial; and (3) the trial court erred in denying her motion for new trial. In one cross point, appellee, Adoption Affiliates, Inc., argues that because validity of the Relinquishment of Parental Rights signed by Martinez is not contested on appeal, there is no real basis for reversing the trial court's judgment. We affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 27, 1996, Laura Martinez gave birth to a baby boy in Austin, Texas. Before the birth, Martinez contacted Adoption Affiliates, Inc. (AAI) for information about placing her child for adoption. Because Martinez does not speak or read English, she was counseled regarding the adoption by a Spanish-speaking counselor. After making her decision to place the child for adoption, Martinez assisted in choosing the adoptive parents for her baby. When the baby was born, AAI representatives and the adoptive parents visited with Martinez at the hospital. The content and legal consequences of the documents necessary to facilitate the adoption were explained to Martinez in Spanish. Martinez executed the documents, including an Irrevocable Affidavit of Relinquishment of Parental Rights, two days after the baby's birth. Martinez signed two copies of the affidavit, one in English and one in Spanish. The baby was then placed with the adoptive parents, where he has since lived.

In order to finalize the adoption, AAI filed a Petition for Termination of Parental Rights on June 4, 1996. A hearing was set for June 11, 1996. Although Martinez waived her right to further notification of the termination proceedings via the affidavit of relinquishment she had signed, she was served with the petition and notice of the hearing on June 5, 1996. On June 10, 1996, Martinez filed an original answer, alleging that she was induced to sign the affidavit of relinquishment through the use of duress, fraud, and illegality.

At the hearing, AAI introduced the documents signed by Martinez as well as the testimony of several witnesses evidencing strict compliance with all statutory and procedural prerequisites in the procurement of the affidavit. Martinez's attorney cross-examined AAI's witnesses. The trial court also obtained testimony from an official Spanish translator who compared the English and Spanish affidavits for similarity. The trial court then ordered that Martinez's parental rights be terminated. Martinez filed a motion for new trial which was denied after a hearing.

## ARGUMENT AND AUTHORITY

### A. Time to Prepare for Trial

In her second point of error, Martinez complains that she was not given an adequate time to prepare for trial. Although Martinez waived her right to service of process and further involvement in the termination proceedings through the affidavit of relinquishment, the petition for termination of parental rights was served on Martinez six days prior to trial. Because Martinez filed an answer, she contends that she put into issue all matters pleaded by AAI. Accordingly, she argues that due process mandates that she be given at least forty-five days to prepare for trial.

Rule 245 of the Texas Rules of Civil Procedure does provide that "the court may set contested cases on written request of any party, or on the court's own motion, with reasonable notice of not less than forty-five days to the parties of a first setting for trial...." TEX.R. CIV. P. 245. Where a

party waives notice of citation but nonetheless chooses to answer, he is entitled to the notice required by Rule 245. *Gonzalez v. State,* 832 S.W.2d 706, 707 (Tex.App.—Corpus Christi 1992, no writ). However, any error resulting from a trial court's failure to provide the parties proper notice under Rule 245 is waived if a party proceeds to trial and fails to object to the lack of notice. *State Farm Fire and Cas. Co. v. Price,* 845 S.W.2d 427, 432 (Tex.App.—Amarillo 1992, writ dism'd by agr.); *see Reyna v. Reyna,* 738 S.W.2d 772 (Tex.App.—Austin 1987, no writ).

█ In the present case, Martinez contends that, before the termination hearing began, she made a motion for continuance based upon lack of adequate notice and the unavailability of her retained attorney. However, no written motion or supporting affidavit is in the record and Martinez acknowledges that no record of the oral motion was made. In fact, the record before us reflects that Martinez appeared at the hearing with her substitute counsel who announced his presence on her behalf. She then proceeded to present argument and to cross-examine witnesses. By failing to properly object to the short notice of the trial setting and by proceeding to trial, Martinez has not preserved this issue for appellate review. *See Price,* 845 S.W.2d at 432; Tex. R.App. P. 33.1 (formerly Tex.R.App. P. 52(a)). Martinez's second point of error is overruled.

## B. Motion for New Trial

In her third point of error, Martinez argues that the trial court erred in denying her motion for new trial based upon newly discovered evidence. The newly discovered evidence proffered by Martinez consists of the affidavit of Michelle Langmead, a social worker involved with the adoption, and W.H. Hyde, Martinez's attending physician during and after the birth. Martinez contends that this evidence so materially demonstrates that she signed the affidavit of relinquishment under duress that it would produce a different result at a new trial.

█ A party seeking a new trial on the ground of newly discovered evidence must satisfy the court that 1) the evidence came to his knowledge since the trial; 2) it was not owing to want of due diligence that the evidence had not come to his attention sooner; 3) the evidence is not cumulative; and 4) the evidence is so material that it would probably produce a different result if a new trial were granted. *Jackson v. Van Winkle,* 660 S.W.2d 807, 809 (Tex.1983). Whether to grant or deny a motion for new trial lies within the sound discretion of the trial court, and the court's decision will not be disturbed absent a clear abuse of discretion. *Id.* When a trial court refuses to grant a new trial based on newly discovered evidence, every reasonable presumption is to be made in favor of the trial court's decision. *Id.* at 809–10.

█ The affidavits of Ms. Langmead and Dr. Hyde are clearly not cumulative as Martinez did not put on any evidence of duress, other than through cross-examination, at the original hearing. However, the remaining three criteria necessary for the granting of a new trial have not been satisfied. With regard to whether the evidence was discovered by Martinez since the original hearing through no fault or lack of diligence of her own, the record indicates that Martinez had knowledge of this evidence at the original hearing. In her affidavit, Ms. Langmead indicated concern regarding the amount of pressure AAI placed upon Martinez to complete the adoption. She noted that the medical team, including Dr. Hyde, expressed its concern to her regarding the presence of AAI staff at the hospital after the baby's birth. She also referenced a letter she sent to the Texas Department of Protective and Regulatory Services expressing such concern.

At the original hearing, Martinez's attorney cross-examined an AAI staff member extensively regarding Martinez's contact with Ms. Langmead. He specifically asked the staff member if "it would surprise [her] to learn that Michelle Langmead wrote a letter to the Texas Department expressing concern over the way the adoption was handled." Martinez's attorney also attempted to introduce the letter into evidence, but AAI's objection to the admission was sustained. Clearly then, Martinez had knowledge of Ms.

Langmead's concern at the original trial. However, she offered no explanation as to why Ms. Langmead was not present to express her concern through testimony at the trial. Under these circumstances, it is difficult to say that the proffered evidence is newly discovered.

Martinez's contention regarding the materiality of Ms. Langmead's and Dr. Hyde's testimony is likewise questionable. Ms. Langmead's affidavit consists primarily of a factual account of the events that transpired following the birth of the baby. She indicated that Martinez was understandably upset by placing her baby for adoption. She concludes by giving her opinion that a foster agreement would have been the preferred approach in this case and that AAI aligned itself with Martinez in a "manner designed to limit her knowledge of options and choice." Dr. Hyde stated in his affidavit that AAI staff were often seen in or near Martinez's room during her hospital stay. He further stated that he "did not see any sign that the individuals were acting improperly, rather [he] felt that their frequent presence *could* be influencing [sic] mother as she tried to decide whether or not to place her newborn for adoption." (emphasis in original). He concludes by stating that he expressed his concerns to Michelle Langmead.

Martinez has not demonstrated how this evidence would probably produce a different result at a new trial. This is particularly true in light of the other evidence adduced at the original hearing: that Martinez contacted AAI before the baby was born for information regarding adoption; that she assisted in choosing the adoptive parents for her baby; that she insisted on a written agreement between her and the adoptive parents regarding her future contact with the baby; that the affidavit of relinquishment was read and explained to her in both English and Spanish; and, that she ultimately executed the affidavit. Because Martinez has failed to demonstrate that the evidence is in fact newly discovered and that it would likely produce a different result at trial, we cannot say that the trial court abused its discretion in denying her motion for new trial. Martinez's third point of error is overruled.

## C. Opportunity to Present Evidence

In her first point of error, Martinez contends that she was deprived of the opportunity to present witnesses or testimony at the hearing on the termination of her parental rights. The record reflects that, following announcements in this case, the attorney for AAI called three witnesses to the stand: (1) the director of AAI who notarized the documents signed by Martinez, (2) the AAI case worker who counseled Martinez before and after the birth of the baby regarding both the legal and practical sides of the adoption, and (3) an independent interpreter who compared English and Spanish versions of the affidavit of relinquishment for similarity. Martinez's attorney cross examined, and in some cases, re-cross examined the witnesses extensively regarding AAI's methods in obtaining the affidavit and the legal validity of the affidavit. Martinez's attorney, in discussions with the court, acknowledged that the purpose of the hearing was to determine whether the affidavit of relinquishment was valid.

After AAI had called its last witness, the trial court asked AAI's attorney if she had anything else. The attorney asked the court to take judicial notice of various sections of the family code and of the birth father's affidavit of waiver of interest in the child. Martinez's attorney stated that he had no objections. The trial court then stated that "[t]he court is going to terminate the parental rights of both the father and the mother." Following some discussion regarding the preparation of an order, Martinez's attorney asked the court if he could "make a quick statement," which the court permitted. He then indicated that "[he didn't] know how to address the issue that [Martinez] was not allowed to put on [her] side [of the case]." The court replied that it would address that issue in a motion for new trial. The hearing was then terminated. In her motion for new trial, Martinez contended that "the court erred when it failed to allow [her] the opportunity to put forth any evidence and dispute any of [AAI's] allegations."

■ AAI contends that this is not a case in which evidence was rejected or denied, but

one in which Martinez simply elected to rest without offering her own witness or otherwise controverting AAI's testimony. AAI argues that because Martinez never objected at trial to the exclusion of evidence or to being cut off before presenting her case and never made an offer of proof, she has waived her error on appeal. *See* TEX.R.APP. P. 33.1 (formerly TEX.R.APP. P. 52(a)). We agree that Martinez did not properly preserve error.

The principal case upon which Martinez relies is *Producer's Const. Co. v. Muegge,* 669 S.W.2d 717 (Tex.1984). The facts of *Producer's,* however, are clearly distinguishable from those in the present case. In *Producer's,* the defendants made motions for judgment after the plaintiff had put on his evidence. The defendants then stated that they were ready to proceed with their case. However, before the defendants were able to present their case, the trial judge stated that he would take the motions for judgment under advisement and would hear no further evidence at that time. The judge then indicated that he would contact the parties after he had considered the motions in order to arrange a time for the trial to be finished. Instead of holding further proceedings, however, the judge rendered judgment in the plaintiff's favor one month later. The record in *Producer's* clearly reflected that the defendants were not given an opportunity to present their case.

Another case upon which Martinez relies is likewise distinguishable. In *Oertel v. Gulf States Abrasive Mfg., Inc.,* 429 S.W.2d 623 (Tex.Civ.App.—Houston [1st Dist.] 1968, no writ), the appeals court reversed the trial court's judgment because the trial court did not allow the defendants to present evidence. The reversal was based on the fact that the trial court's judgment recited that "the trial court refused to allow appellants to present any evidence at the trial" and the record indicated that "appellant duly objected to this action." *Id.* at 624.

Other cases cited by Martinez are similarly distinguishable. We do note, however, that Martinez has not cited any parental termination cases. And, given the unique nature of parental termination cases, we feel compelled to address the due process issue in the parental termination context.

It is well-established that the natural right of parents to their children is of constitutional dimension. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *see* U.S. CONST. amend. XIV. Accordingly, termination proceedings must be strictly scrutinized. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex.1985); *In Interest of G.M.,* 596 S.W.2d 846 (Tex.1980); *Wiley v. Spratlan,* 543 S.W.2d 349 (Tex.1976). Such strict scrutiny requires that the "fundamental and invaluable right of the litigant to be heard under the due process clause of the United States and Texas Constitutions" be protected. *Speed v. Guidry,* 668 S.W.2d 807, 810 (Tex.App.—San Antonio 1984, no writ); *see Jordan v. Jordan,* 653 S.W.2d 356, 358 (Tex.App.—San Antonio 1983, no writ). However, even in the parental termination context, litigants must preserve error in order to complain on appeal that they were denied the right to present evidence.

In *Speed,* this court reversed a termination case where one party was not permitted to present its case. *Speed,* 668 S.W.2d at 810. In that case, the trial court had heard only one party's evidence before it announced its ruling. Counsel for the opposing party then indicated that he wanted to offer evidence regarding statutory grounds for termination. The trial court refused the request and stated that the matter could be appealed. Counsel replied: "[w]e want to make sure that this is clear. The Court is refusing to hear any evidence on the statutory grounds for termination of parental rights?" The court responded, "Right." Thus, there was a clear objection, on the record, by the complaining party, as well as an indication that the party was ready to proceed and a refusal by the trial court to hear further evidence. The error in *Speed* was, therefore, properly preserved.

In another parental termination case, the Amarillo court of appeals affirmed a judgment of termination despite the fact that the trial court ended the proceeding before the birth mother had rested her case. *In Interest of McAda,* 780 S.W.2d 307 (Tex.App.—Amarillo 1989, writ denied). When the trial

court in *McAda* "manifested its intent to end the hearing," the birth mother's attorney requested and received the court's permission to make a bill of exception. However, because no bill of exception appeared in the record, the appellate court found waiver. The court stated that it could not consider an objection to the exclusion of testimony if the record does not show what the testimony would have been. Thus, the court concluded that nothing was presented for review. *Id.* at 313.

In the case before us, the record indicates that the trial judge prematurely ended the proceeding.[1] Although Martinez's counsel had participated in the hearing by cross-examining AAI's witnesses, he had not presented any evidence on behalf of Martinez at the time the trial court made its judgment. Counsel, however, did not lodge a proper objection regarding his desire to present Martinez's case, and he did not obtain a ruling from the trial court. The only comment from Martinez's attorney was, "I don't know how to address the issue that we were not allowed to put on our side." The trial court responded by stating that Martinez could file a motion for new trial. There was no objection, nor was there a ruling from the court regarding the fact that Martinez would not be allowed to present evidence.

There is also no indication in the record that Martinez, although present, was ready or willing to offer any testimony or proof, nor was a bill of exception requested or made. While Martinez did file a motion for new trial, she offered no evidence at the hearing other than the affidavits of the social worker and the doctor. Even then, she did not argue that she was precluded from offering this evidence at trial, but instead urged that the evidence was newly discovered. As discussed above, this evidence does not qualify as newly discovered evidence. Accordingly, the trial court overruled the motion for new

trial. Because Martinez has failed to preserve her complaint regarding the fact that she was not permitted to present her evidence at trial, either at the trial or at the hearing on her motion for new trial, we must overrule her first point of error.

Because we have overruled all of Martinez's points of error, it is unnecessary for us to address AAI's cross point of error regarding the sufficiency of the evidence. The judgment of the trial court is affirmed.

---

1. There is nothing in the record to indicate why the trial judge ended the proceeding in the manner in which he did. Given Martinez's arguments regarding her lack of adequate time to prepare for trial, it is possible that Martinez was, in fact, not prepared to go forward with proof at that time. If such were the case, a written motion for continuance, supported by affidavits,

would have been appropriate. Although there are indications in the record that Martinez did, in fact, file a motion for continuance or, at the very least, urge an oral motion for continuance, as discussed above, there is no written motion or transcription of the presentation of an oral motion in the record.